May it please the Court, John Yunshai, on behalf of the United States Attorney General. And before you start your argument, let me at least say this in the tape of the argument. We submitted an order denying a request to submit on the briefs. We gave an opportunity to Mr. Karana's attorney to appear by telephone, and he has chosen neither to appear in person nor to appear by telephone. There was a contact made with his secretary this morning by telephone. The secretary was unable to put Mr. Karana's attorney on the telephone this morning, so all we know is that there has been a... excuse me, the secretary said he was ill and unable to be even spoken to on the telephone. So I want to be clear on the record that we have done our best to afford an opportunity to Mr. Karana's attorney to appear. All right. Thank you, Your Honor. Your Honor, substantial evidence supports the agency's finding in this case that Mr. Karana did not credibly, first of all, establish his identity as required by Section 208d5a of the Immigration and Nationality Act, and therefore did not meet his burden in establishing that he merited asylum or withholding removal or convention against torture relief. What specific documents and information did he offer to establish his identity? He offered a certificate from a church, a baptismal certificate that was issued 27 years after... it was his own, obviously, that was issued 27 years after his birth. And he also testified of his own testimony. That is all that he offered to establish his identity. And what do you mean not authenticated? What would constitute authentication as you're using the term? By the regulation, to have a document authenticated, it would have to be authenticated by the U.S. consulate abroad as being authentic or U.S. government as being authentic in this situation, say, an Iraqi identification card. The Court, of course, can still consider it as being what it purports to be. But accordingly, if it was, hence, of course, authenticated, it would be given greater weight. Do we have evidence that he's not who he says he is? Well, I think the judge in this case had found that he hasn't proven that he says who he is. Now, my question is different. Do we have evidence that he is not who he says he is? Do we have conflicting evidence, in other words? Well, only to the extent, Your Honor, that he did say he traveled on a Greek passport, which he never did present to the immigration judge because the judge had found that the reason that he didn't do so was really not a credible story and that he had left it behind in Mexico. How did he say he was traveling on a Greek passport? I'm sorry? Is that right? Yes. He said he was traveling on a fraudulent Greek passport. Yeah, a fraudulent Greek passport. So it wasn't an authentic document. And that had somehow mysteriously disappeared. That had disappeared. And my point was going to be that the fact that he said he had a Greek passport and didn't present it to the court, the judge had found that that was critical because he didn't establish that he was from Iraq and that he had lived in Greece, it doesn't preclude the fact that perhaps he was someone that was living in Greece and was traveling on an authentic Greek passport. Is there any evidence that he spoke Greek? There is no evidence in the record that he spoke Greek, no, Your Honor. And if it's a fraudulent passport, how is that going to prove his identity? Well, that's true. That's true, Your Honor. But I think that the judge noted that more so because it brought his identity into question. How can the non-presence of a fraudulent passport bring his identity into question? That is to say, if he presents a fraudulent passport that has his picture and somebody else's name on it, that does not help prove his identity. Right, Your Honor. Well, taken as true, if it did in fact — if it was in fact a fraudulent document, then — Well, I mean, that's what he told us. He got a phony passport in Greece. How do we know that's true? How do we know it was phony? Well, that's exactly the point that the judge raises, Your Honor, that the Petitioner had — or Mr. Torano had the burden of proof that he is who he says he was. And that's precisely the question that was raised in the immigration judge's mind, was that he didn't believe that Mr. Torano had provided enough evidence to establish who he says he was, and was left with that doubt in his mind. And because the Petitioner had the burden to prove that, the judge, according to the reasons that he gave, considering not only the fact that he had the Greek — the Greek passport wasn't present, which, of course, raised doubt in his mind, or at least didn't allow the immigration judge to formulate the finding that he was an Iraqi. Moreover, I mentioned the two — the two pieces of document that he did provide. And also, he gave the — the — Mr. Torano plenty of time, and he had continued proceedings so that he could get further evidence of his identity, including corroboration from a friend that he stayed with in Greece, and indicating that — I believe the proceedings were continued for several months, and specifically told him that he had the opportunity to do so. And it didn't provide — when asked to do so, it didn't provide that further corroboration from the person that he stayed with in Greece. Why was the corroboration of staying in Greece important? I think, Your Honor, that the — what was important was, of course, his identity. The fact that he stayed with someone in Greece, the judge found it would have corroborated his claim if he had some sort of affidavit from that individual he stayed with indicating that, in fact, what he said was true, and that this person arrived via Turkey, and he knew him previously as being an Iraqi. How do we know he — how do we know he was in Greece at all? Well, by way of his testimony, really. Again, it's his testimony. It's his testimony. Is there any other independent information other than the supposedly lost fraudulent passport that says he was ever in Greece? Well, there is a photograph of him standing in front of a Greek monument, I believe, in the record. Outside of that, no. And there is an affidavit — there is a statement, I should say, from an individual in — I believe it is his cousin in the Netherlands who was supplying him with money to travel through Turkey, then Greece, and then through France, ultimately landed — went through France to Tijuana. So there are those two pieces of information. What was this last one you just mentioned? I'm sorry? What was the last one you just mentioned that showed going through — It was a statement from a cousin or a family friend in the Netherlands who was supplying him with money to facilitate his departure from Iraq. Okay. The proceedings were conducted in the Iraq language, right? In Chaldean. Okay. They were conducted in Chaldean, which the judge noted isn't exclusively spoken in Iraq itself. Okay. And could have been from surrounding countries in the area. But, yes, he did speak. He did speak Chaldean. Yes, Your Honor. To what extent did the immigration judge hold his demeanor against him? Well, I think he does make mention briefly that he was left with the sense that given what — given the substance of his testimony and the lack of corroboration, I think he also said that he was left with the sense that he did not feel as if, given the way that his testimony was given, that it was credible. He doesn't specifically state that he — give a specific indice of what exactly it was. Well, no, he does give some things. He does go through the specific things of the specific bases upon which the I.J. says, I find him not to be credible because of, and he's required to do that in order to support an adverse credibility finding. Yes, Your Honor. So what does the I.J. say? The I.J. says he found, outside of the identification issue, he also found implausible that he was — there is — part of his claim is that he was working, part of the time, as an electrician. I.J. did not find plausible, or there wasn't record evidence to support, that he was, in fact, an electrician, given the fact that he said he was constantly harassed in school. He went to high school for four years. Right after high school, he went to the military. And the I.J. didn't find plausible that during this time he became an electrician, which led to — He testified that he went to an industrial high school and he was trained as an electrician in that high school. Yes, Your Honor. But I don't — and I don't understand what basis the I.J. has for saying, well, you were harassed in school, yes. But he says, yes, I was harassed in school and I did graduate and I learned how to be an electrician. I don't see the inconsistency in that. Well, I think it was more so the plausibility of that, given the fact that he was harassed the way that he said he was during that time. Well, but he didn't — he didn't say I was prevented from going to high school. He said I was harassed during high school. So it's implausible that he — merely harassed? I mean, I don't understand the implausibility of the statement. Well, the I.J. I think believed that the plausibility of that statement came to light in the fact that he didn't believe that the manner in which he testified he could have obtained the certificate that he did, considering also that, moreover, he went to the military afterwards and spent four years there, worked with his father for several years. There had been a period of 10 years that had passed and his father's shop where he worked at was burnt down and then says he turned it into an electrician shop. I think that leads to the most important thing as far as the other critical finding, and that is that he indicated, Your Honor, that he was asked by the Bath Party to work on one of their offices and he agreed to do so, given the treatment that he said he suffered at the hands of the Bath Party. The judge found it implausible that he would do that. And also that the fact that he worked there and then also stood up to the Bath Party when they said that we're not going to pay you unless you — we're not going to pay you, period. You have to sign this document that indicates that we did pay you and we'll take care of your prior problems of being a member of the opposition party. The judge didn't find that plausible, considering the record evidence that supports the fact that the Bath Party was as severe as it was back during that time when it was in existence. And he didn't find it plausible because — I mean, what — the story that's told is — I was not particularly afraid. It was the local party headquarters in the particular town. It was not the headquarters' headquarters. The judge finds that also inconsistent, which I find totally inconsistent with the testimony because he says, no, it's the local headquarters. He says, no, I wasn't afraid. Now, if he — I would have thought that if he wanted to make it a really good story, he would have said I was terrified from the very first day. Well, he only becomes afraid after they tell him, you know, we're not going to pay you. And he says, you know, I really would like to be paid. I don't want to — I don't want to deal with this. And then that night he's warned, he says, by his friend, that you better stay somewhere else. And his story is that they then went after his dad. And his dad signs a piece of paper after having been in prison for two days. I mean, I don't get what is so inherently implausible or inconsistent about that story. Well, you got to — I see my time is up. That's OK. Keep going. Thank you. I think the important thing to note, though, is that there may be substantial evidence in the record to support an alternate conclusion in this case. But, of course, it's important to see whether or not the record compels the finding or an alternate finding in general, other than what he found. The record, to say what the immigration judge did, he did not find it plausible. And I think it's reasonable for him to conclude that because of the fact that, of course, if someone fears persecution at the hands of a party or any group of individuals, in this case the Ba'ath Party, and they're offered an opportunity to come work for them in their office, it's plausible for him to think that you wouldn't want to do that. He did do it. And perhaps one reason could be he was afraid that if he didn't do it, he'd be hurt. He does it. But that is undercut by the fact that when they tell him, we're not going to pay you, sign this document, he stands up to them at that point and says that, no, I want my money, and that's the way that I want it. It's implausible to say on one end he wasn't afraid to work there, and then on the other end for him to stand up to them and say that there's an underlying current of fear that he has with the Ba'ath Party. And, of course, again, I point to the record. It sounds as if, actually, that he wasn't afraid. He thought he could work at the local headquarters and be paid, and it's only after he works there that he finds out all this stuff is going on. I mean, it's possible for a person not to be afraid in certain circumstances, and then things change. All of a sudden they say, well, guess what? We're not going to pay you. And he says, what do you mean? And the next thing he knows, he's being threatened. It doesn't sound like such a crazy story to me. Again, Your Honor, if I may, of course there could be alternate conclusions drawn and supported by the record. I guess what I should say is I don't see why that's a crazy story to anybody. Well, I think you have to take this all in totality, too, given the problems with the identity. I don't understand the problem with the identity. He wasn't speaking Greek. He had an Iraqi ID card. Somehow he got a new baptismal certificate. He's got a cousin in Netherlands who says, you know, I helped him out and here's all the stuff. And the only thing that seems to be bothering the immigration judge is he loses this phony Greek passport, which is, by the way, in a different container than his other documents, supposedly. Now I can understand why somebody wouldn't want to present phony documents to a government agency, but that's it is this phony Greek. I don't understand why there's such a question as to his identity. Is it because he's speaking Chaldean? But he says he's from that part of Iraq. I don't know. What does a person have to come in with to show that they are who they are? Well, that would be, again, it's their burden to prove their claim, and it's up to the judge to, I guess, ascertain what the judge would need to have that claim established. In this case, given what was presented to the immigration judge and the fact that the judge did give him a continuance to get further documentation and brought up the identity issue himself prior to the last hearing, the judge did, and gave him an opportunity to corroborate his identity further, and he failed to do so. Can you point to me on the right? I'm sorry. Go ahead. No, I was just saying that I wanted to go. The problem is he didn't get his Iraqi ID card certified by a U.S. official in Iraq before he snuck out? Well, I don't think that so much is what made the case or made the mind up of the judge. That's one thing that would, of course, help prove his identity if it was authenticated. But that's not the issue, the sole reason why. That lowers the weight of the evidence that was presented to the immigration judge, and the judge simply found that what was presented just wasn't enough. Doesn't it have to be proved by clear and convincing evidence? In terms of his identity? To prove who he is? Yes. What's the burden that he has? Well, he has to, yes, that he has to prove that the burden of proof is that he has to prove by clear and convincing evidence that actually clear and convincing evidence goes to, yes, it would go to his identity. Yes, it would prove that. That would be what he has to show. Can you point me in the record to the place where the I.J. says I want more evidence of your identity? I want to make sure I'm focused properly on this. Yes, Your Honor. I think it would be page 112 of the record where he brings it up and asks him. Hang on, hang on. Sure. Okay. It's also on page 39 where the I.J. says, at the initial hearing on December 19, the respondent was present. Based on the fact the respondent had not provided any document that would show his eligibility for admission as an immigrant, the court does find him removable. At the continued hearing, needed additional time to supplement the record, the court granted respondent's request and set the case over. But what I'm after is the I.J.'s statement that what I need is evidence of your identity, not just additional corroborating evidence. And I don't see that yet. There may be here, but I don't see it yet. Judge, it doesn't say specifically that he needs further. I think he says, though, in general terms that he wants. What does he mean when he says he has no document that would show his eligibility for admission as an immigrant? Your Honor, I'm sorry. What page would that be on? Thirty-nine. Thirty-nine. The very bottom. That's the oral decision of the I.J. Yes. That's the oral decision of the immigration judge. What I'm after is the judge talks after something else. What I'm after is you say that he gave in specifically asked him to provide additional corroborating evidence of his identity and gave him a chance to produce it, and then he didn't produce it.  Provide me with additional corroborating evidence of your identity, because if he did that and there were several months elapsed and he doesn't come back with it, that's a clear point against him. But I want to see where the request was made and I want to see the terms in which the request was made. My problem is I don't remember having seen the request. Now, I read an awful lot of pages and I read an awful lot of pages every day and I read quickly and I could have missed it. So this is not a trick question of I know you're wrong. This is I'd like to see it because I might have missed it. I'm not taking it as such, Your Honor. And I think that there isn't an explicit statement that says that he has an issue with his identity other than the fact that he I guess opens the door to provide further corroboration in general, but does not specifically state I have a problem with your identity, give me specific identity documents at that point. But does specifically suggest that he get evidence from the individuals abroad that he remained with that would have supported or corroborated his claim in general. And those are the terms that he's speaking in here. But I would hope that that is enough. It sounds like he's concerned at this point that he may have been resettled elsewhere and that he wants the information about his travel from Iraq to try and get a picture that he was of where he was. Because it sounds like here he's concerned about, well, maybe he was resettled elsewhere. That's certainly true. And the judge later finds that even if the testimony, if he found it to be true, that he would find he was not firmly resettled in that country, in Greece. However, again, just speaking as a general matter, this, of course, comes up after the fact, the issue with the identity. When reading this, though, had he taken the opportunity, as the judge had suggested, that he get further corroboration for his claim in general, that would have supported his claim. But to be clear with the Court, yes, that portion of the record does not state that the judge found an issue with his credibility. When the I.J. said the identity continues to be an issue, did he ask for a continuance to get some more evidence on that? I don't recall reading that in the record, Your Honor. The final hearing is when all this was flushed out. There was, of course, a continuance. The testimony was taken in the beginning. And he was given an opportunity to provide the originals of the two identity documents that or one of the two identity documents that he did present. Petitioner lived in Michigan at this point. And they continued proceedings to allow that to happen. But no, to answer your question, no, they did not continue proceedings again. Thank you. Okay. Now, if, and this is an if, if we were to find, despite the I.J.'s adverse credibility finding, if we were to find the Petitioner credible, what then? Well, then at that point, Your Honor, the Court should remand it back to the agency to make a determination under INS v. Ventura to make those initial determinations regarding the other aspects, whether or not he merited the past persecution, well-founded fear, and everything else. This was the only finding that the judge made. Right. And would the additional proceedings after a Ventura remand include not only whether there was a well-founded fear based upon the story now taken as true, but also changed country conditions? I mean, the elephant in the room is that to the degree that there was persecution, it was by the same regime, and that's gone. What if the I.J. on remand says, well, you know, if it's true, I take it as persecution, but listen, the changed country conditions are such that he has no well-founded fear. Right. Is that question open on remand? That, Your Honor, I can't answer with absolute certainty. I would say, though, that they would rule, according to the record, of course, before him. The government, of course, would probably move to submit additional evidence of changed country conditions. But my – without giving – of course, without giving you a clear and concise answer, which is what you want, I would say that – Well, and I don't know answers. I mean, if that's the answer and I don't know answers, a fine answer. Yeah, I'm not exactly sure. Okay. But, of course, that is the elephant. Yeah. Okay. Thank you very much. We occupied your time and the other side's time and argument. Thank you, Your Honor. We appreciate your careful argument. The case of Corona v. Gonzalez is now submitted on the briefs – excuse me, now submitted for decision. The case of Alan Nusch v. Gonzalez has been submitted on the briefs. Now, the next case, Lopez-Santacruz v. Gonzalez, we submitted an order – The next case on the briefs, and I gather it was not communicated to the – to either side. And we have the government and the Petitioner now in the courtroom. If you'll give us just one minute to consult, we'll take about a two-minute recess, maybe even a one-minute recess. All rise. This court stands at recess. Thank you. Thank you. All rise. I had my secretary check this morning, and we did send the submission order to the clerk's office. And I don't know what happened that – where the mix-up was in the sense of it not being communicated to the parties. And we apologize that you came unnecessarily to court this morning. The case was submitted on the briefs, and after a brief consultation, we've decided it remains submitted on the briefs. We apologize for the mix-up by the clerk's office, but we checked this morning. We sent it down to the clerk's office, but it was not communicated. I apologize. The next case on the calendar, Sandoval Buzio v. Gonzalez, was – has already been dismissed and remanded.
judges: Trott, W. Fletcher, Restani